**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>JOSIAH WILLIAMS,<br><br>      Defendant. | No. 05-CR-1014-LRR<br><br>**SENTENCING MEMORANDUM** |

## *I. INTRODUCTION*

In this sentencing, the court decided a number of important legal issues. In calculating Defendant Josiah Williams's advisory Sentencing Guidelines range,[1] the court decided: (1) the appropriate base offense level; (2) whether Defendant was subject to a

---

[1] Although application of the Sentencing Guidelines is no longer mandatory, [in the Eighth Circuit] district courts are still required to consult the Guidelines and take them into account in calculating a defendant's sentence. A district court must calculate a defendant's advisory Guidelines sentencing range based on his total offense level, criminal history category, and any appropriate departures. The court may also vary from the advisory Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a) as long as the resulting sentence is reasonable. Proper application of the Guidelines "remains the critical starting point" for fashioning a reasonable sentence under § 3553(a), and a sentence within the properly calculated Guidelines range is presumed to be reasonable.

*United States v. Jeremiah*, 446 F.3d 805, 807 (8th Cir. 2006) (citing, in part, *United States v. Booker*, 543 U.S. 220, 264 (2005)).

two-level increase for obstruction of justice; and (3) whether Defendant should be given a two-level reduction for acceptance of responsibility. In addition the court determined whether a variance was warranted and whether Defendant's sentence should run concurrently with his state court sentences.

## II. PROCEDURAL BACKGROUND

On March 24, 2005, a grand jury charged Defendant in a one-count Indictment. Count 1 charged that, on or about October 3, 2003, Defendant knowingly and intentionally distributed and aided and abetted the distribution of approximately 18.99 grams of a mixture or substance containing a detectable amount of cocaine base, commonly called "crack cocaine," a Schedule II controlled substance, within 1,000 feet of the real property comprising a school, that is: St. Mary's/St. Patrick's West grade school located at 180 W. 15th Street, Dubuque, Iowa, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 860 and 18 U.S.C. § 2.

On October 3, 2005, Defendant's jury trial began. On October 4, 2005, the jury found Defendant guilty of distributing and aiding and abetting the distribution of 5 grams or more but less than 50 grams of a mixture or substance containing a detectable amount of cocaine base, commonly called "crack cocaine," within 1,000 feet of the real property comprising a school.

On March 24, 2006, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSIR"). On July 14, 2006, the USPO revised the PSIR. On August 29, 2006, the government and Defendant filed their respective sentencing memoranda and lodged objections to the PSIR.

On September 12, 2006, the defendant came before the undersigned for a sentencing hearing ("Hearing"). Assistant United States Attorney Daniel Tvedt represented the government. Defendant was personally present and represented by Attorney Webb

Wassmer. At the conclusion of the Hearing, the court pronounced sentence in a manner consistent with the instant Sentencing Memorandum.

### III. ADVISORY SENTENCING GUIDELINES CALCULATION

#### A. Base Offense Level

The applicable sentencing guideline for Defendant's violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 860 and 18 U.S.C. § 2 is USSG §2D1.1. *See* USSG App. A. Defendant objects to the drug quantity calculation in the PSIR, claiming that he should be sentenced using the powder cocaine guidelines. Defendant asserts that there was insufficient evidence that the substance distributed by him was "crack" cocaine and not some other form of cocaine base. This issue was not raised during trial.

The Sentencing Guidelines define "crack" as the street name for "cocaine base" that appears "in a lumpy, rocklike form." USSG §2D1.1(c) (n.D). The identity of a controlled substance can be shown by circumstantial evidence and opinion testimony. *United States v. Covington*, 133 F.3d 639, 643 (8th Cir. 1998); *United States v. Williams*, 982 F.2d 1209, 1212 (8th Cir. 1992). The lab report admitted into evidence during trial described the substance distributed by Defendant as "off-white chunks of cocaine base," thereby indicating that it was, in fact, crack cocaine and not some other non-crack form of cocaine base. *See United States v. Goodson*, 165 F.3d 610, 615 (8th Cir. 1999) (holding evidence was sufficient to prove that the drugs seized were crack cocaine and not another form of cocaine base); *United States v. Stewart*, 122 F.3d 625, 628 (8th Cir. 1997) (holding that the jury properly determined that a substance was crack cocaine based on the cocaine base's rock-like appearance); *United States v. Watkins*, CR-99-73-LRR, 2006 WL 1523149, at *17 (N.D.Iowa June 2, 2006). Additionally, Iowa Division of Narcotics Enforcement ("DNE") Special Agent Darrell Simmons and Maurice Malone, a convicted cocaine dealer, testified that the substance Defendant distributed was crack cocaine; in fact,

3

Defendant, himself, identified the substance as crack cocaine during his trial testimony. *See United States v. Anderson*, 450 F.3d 294, 301 (7th Cir. 2006) (holding that the "identity of a drug may be proven by evidence besides chemical tests, such as visual identification by persons familiar with the drug"); *United States v. Booker*, 260 F.3d 820, 824 (7th Cir. 2001) (same). There is no question that the substance provided to the lab was a rock-like substance and was, in fact, "crack" cocaine. Defendant was subject to the penalties prescribed by 21 U.S.C. § 841(b)(1) and the guidelines for crack cocaine.

Defendant was convicted of distribution of "crack" cocaine within 1,000 feet of a protected location. The appropriate guideline for a violation of 21 U.S.C. § 860 is USSG §2D1.2. USSG App. A. This guideline deals with drug offenses occurring near protected locations and directs that the base offense level should be determined by applying the greatest of USSG §2D1.2(a)(1) through (a)(4).

>§2D1.2. <u>Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals: Attempt or Conspiracy</u>
>
>(a) Base Offense Level (Apply the greatest):
>
>(1) **2** plus the offense level from §2D1.1 applicable to the quantity of controlled substances directly involving a protected location or an underage or pregnant individual; or
>
>(2) **1** plus the offense level from §2D1.1 applicable to the total quantity of controlled substances involved in the offense; or

(3) **26**, if the offense involved a person less than eighteen years of age; or

(4) **13**, otherwise.

USSG §2D1.2 (emphasis in original). The greatest adjustment under this guideline is USSG §2D1.2(a)(1), which directs a two-level increase in the offense level determined by USSG §2D1.1 applicable to the total quantity of controlled substance directly involved in the offense. Pursuant to §2D1.1(a)(3), the base offense level was determined by the amount of controlled substance Defendant is accountable for under relevant conduct. Defendant was accountable for 379.82 kilograms of marijuana equivalent drugs. Defendant's base offense level was **26**. *See* USSG §2D1.1(c)(7) (stating a defendant's base offense level is 26 if the offense involves at least 100 kilograms but less than 400 kilograms of marijuana). Defendant is subject to a two-level increase pursuant to §2D1.2(a)(1), for distributing drugs within 1,000 feet of a school; therefore, Defendant's base offense level is **28**.

## *B. Obstruction of Justice*

The parties disagreed on whether Defendant was subject to a two-level increase for obstruction of justice. *See* USSG §3C1.1. The Sentencing Guidelines provide for a two-level obstruction of justice increase when a "defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." USSG §3C1.1. "Obstruction of justice includes threatening or intimidating witnesses, committing or suborning perjury, falsifying records, making false statements, escaping from custody, or failing to appear at judicial proceedings." *United States v. Kenyon*, 7 F.3d 783, 786 (8th Cir. 1993) (citing USSG §3C1.1 cmt. (3)); *see also United States v. John H. Sitting Bear*, 436 F.3d 929, 934 (8th Cir. 2006) (stating that "general denials of guilt that are not made under oath do not

5

support an obstruction enhancement") (citing *United States v. Yankton*, 986 F.2d 1225, 1228 (8th Cir. 1993)). "In order to base an obstruction of justice enhancement on a defendant's trial testimony, the district court must find by a preponderance of the evidence that he perjured himself." *United States v. Lewis*, 436 F.3d 939, 945 (8th Cir. 2006) (citing *United States v. Taylor*, 207 F.3d 452, 455 (8th Cir. 2000)); *see also United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir. 2006) (holding that "a sentencing enhancement for obstruction of justice may be based on the experienced trial judge's finding that the defendant lied to the jury").

> A district court applying the obstruction-of-justice enhancement for perjury must review the evidence and make an independent finding, by a preponderance of the evidence, that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Taylor*, 207 F.3d 452, 454-55 (8th Cir. 2000) (quoting *United States v. Dunnigan*, [507 U.S. 87, 94] (1993)).

*United States v. Ziesman*, 409 F.3d 941, 956 (8th Cir. 2005).

During trial, Special Agent Simmons testified that Defendant placed one bag of crack cocaine and one bag of marijuana on the arm of the sofa where Special Agent Simmons was seated. When Defendant told Special Agent Simmons that the drugs cost $1,500, Special Agent Simmons told Defendant that he only had $1,400. Special Agent Simmons testified that Defendant stated that $1,400 was acceptable, so Special Agent Simmons handed Defendant $1,400. Special Agent Simmons's testimony was corroborated by Maurice Malone. Malone testified that the sale of crack cocaine and marijuana was put together by Defendant and Lamarr Parks and that Defendant physically exchanged the marijuana and crack cocaine for cash from Agent Simmons.

6

In contrast, Defendant testified that he did not bring a bag of crack cocaine to the living room or put it on the sofa near Special Agent Simmons. During trial, Defendant only admitted to arranging a sale of marijuana, bringing a bag of marijuana into the room and placing the marijuana near Special Agent Simmons. He denied any involvement with the crack cocaine and asserted that Parks was the person who initiated the crack cocaine transaction, brought the crack cocaine into the room and placed it on the sofa arm that was close to Special Agent Simmons.

The court found the testimony of Special Agent Simmons and Malone credible and Defendant's testimony not credible. The court found by a preponderance of the evidence that Defendant perjured himself during trial by denying, under oath, any involvement in the distribution of crack cocaine. The court found the false testimony was on a material matter and was intentionally false. Defendant testified in the hope of evading conviction. The court, therefore, assessed the **two**-level increase for obstruction of justice against Defendant. This brought Defendant's adjusted offense level to **30**.

### C. *Acceptance of Responsibility*

The parties disagreed on whether Defendant was entitled to a two-level decrease for acceptance of responsibility pursuant to USSG §3E1.1. Section 3E1.1 provides:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to

7

> allocate their resources efficiently, decrease the offense level
> by **1** additional level.

USSG §3E1.1 (emphasis in original). Defendant bears the burden to prove he is entitled to a downward adjustment for acceptance of responsibility. *United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999). "An enhancement for obstruction of justice . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," and, while exceptions exist, they are "extremely rare." *United States v. Perez*, 270 F.3d 737, 738 (8th Cir. 2001) (internal quotations omitted) (citing USSG §3E1.1, cmt. (n.4) (1998)).

To determine whether a defendant qualified for acceptance of responsibility, the court considered whether that defendant "truthfully admit[ted] the conduct comprising the offense[] of conviction, and truthfully admit[ted] or [did] not falsely deny[] any additional relevant conduct for which the defendant [was] accountable." USSG §3E1.1, cmt. (n.1(a)). Although a defendant is not required to volunteer relevant conduct to obtain acceptance of responsibility, "a defendant who falsely denie[d], or frivolously contest[ed], relevant conduct that the court determine[d] to be true has acted in a manner inconsistent with acceptance of responsibility." *Id*. "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and his or her determination in this regard "is entitled to great deference on review." *Id.* cmt. (n.5).

During the September 12, 2005 guilty plea hearing, Defendant refused to admit that he was guilty of the crime charged in the Indictment. In his sentencing memorandum, Defendant asserted that he admitted to participating in the offense as an aider and abettor. A review of the court reporter's notes from the September 12, 2005 guilty plea hearing reveals that Defendant only admitted to being involved in the distribution of marijuana and not the crack cocaine as charged in the Indictment. Likewise, during trial, Defendant denied his involvement with crack cocaine. The court found that Defendant's case was not

one of the "extremely rare" cases in which a decrease for acceptance of responsibility is warranted even though Defendant's sentence was enhanced for obstruction of justice. Therefore, the court found that Defendant was not entitled to receive a two-level reduction for acceptance of responsibility. *See* USSG §3E1.1, cmt. (n.2) (The reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial."); *United States v. Speck*, 992 F.2d 860, 861 (8th Cir. 1993) (same).

Based on a total offense level of **30** and a criminal history category of **VI**, Defendant's guideline imprisonment range is **168 to 210 months**.

### D. Variance

Defendant requested that the court apply a 20:1 ratio for crack cocaine as a downward variance from the Sentencing Guidelines due to the "questionableness of the 100:1 disparity between sentences for 'crack' vs. powder cocaine" (docket no. 61). In *United States v. Robinson*, No. 05-3618, 2006 WL 2588140, at *1-2 (8th Cir. Sept. 11, 2006), the Eighth Circuit Court of Appeals held that Robinson was properly sentenced to the mandatory minimum sentence for distribution of crack cocaine instead of being sentenced "to the lesser penalty for distributing powder cocaine." *Robinson*, 2006 WL 2588140, at *2 . The Eighth Circuit Court of Appeals noted that, when Congress enacted the Anti-Drug Abuse Act of 1986, "Congress intended to deter the rising use of crack cocaine . . . a relatively inexpensive, smokeable, highly-addictive form of cocaine" by setting the mandatory minimum for distribution of crack cocaine higher than the mandatory minimum for distribution of powder cocaine. *Id*. The Eighth Circuit Court of Appeals has repeatedly held that it is not error for a district court to refuse to depart downward for the disparity in sentences between crack and powder cocaine cases. *See United States v. Surratt*, 172 F.3d 559, 564 (8th Cir. 1999); *United States v. Crawford*, 83 F.3d 964, 965-

66 (8th Cir. 1996); *United States v. Jackson*, 64 F.3d 1213, 1219-20 (8th Cir. 1995); *see also United States v. Huff*, No. 95-3896, 1996 WL 314271, at *1 (8th Cir. June 12, 1996); *United States v. Clary*, No. 96-1790, 1996 WL 520761, at *1 (8th Cir. Sept. 16, 1996). Several other circuits have rejected the argument that a downward departure is appropriate due to the disparity in sentences between crack and powder cocaine cases. *See United States v. Williams*, 456 F.3d 1353, 1366 (11th Cir. 2006) (holding that the district court improperly considered its disagreement with Congress's 100:1 crack to powder cocaine sentencing disparity as a factor in determining a defendant's sentence); *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006) (holding that a district court must "carry out the legislative choice" of the 100:1 crack to powder ratio); *United States v. Eura*, 440 F.3d 625, 634 (4th Cir. 2006) (holding that the district court can not ignore the 100:1 crack-to-powder ratio in favor of its own ratio); *United States v. Pho*, 433 F.3d 53, 64 (1st Cir. 2006) (holding that "the district court erred as a matter of law when it constructed a new sentencing range based on the categorical substitution of a 20:1 crack-to-powder ratio for the 100:1 ratio embedded in the sentencing guidelines"); *United States v. Gunter*, No. 05-2952, 2006 WL 2589149, at *11 (3d Cir. 2006) (holding that the district court may consider the crack to powder cocaine differential as a sentencing factor and not a mandate, however, cautioning the district court from rejecting the 100:1 ratio and substituting its own ratio); *United States v. Castillo*, No. 05-3454, 2006 WL 2374281, at *17-18 (2d Cir. 2006) (holding that "while the 100:1 ratio clearly produces a disparity, it is one that Congress has mandated" and "continually refused to alter" and the court is not free to "impose a different ratio as a policy matter").

The court evaluated the 18 U.S.C. § 3553(a) factors to determine whether a downward variance was appropriate in Defendant's case. For the reasons set forth in Section A above and enumerated by the government in its sentencing memorandum and

10

in light of Congress's intent to deter the use of crack cocaine by implementing the 100:1 sentencing disparity, the court concluded that a downward variance was not warranted in Defendant's case.

### E. *Sentence to Run Consecutive with State Sentences*

Defendant requested that his federal sentence run concurrently with three prior undischarged state convictions pursuant to USSG §5G1.3. Section 5G1.3 provides

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>>
>> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the

> instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

Defendant was subject to a five-year term of imprisonment for theft in the second degree (PSIR ¶ 63), a consecutive ninety-day term of imprisonment for operating a motor vehicle while intoxicated (PSIR ¶ 68) and a consecutive five-year term of imprisonment for possession of marijuana with intent to deliver (PSIR ¶ 72). At time of sentencing, these terms of imprisonment were not discharged.

In the PSIR, Defendant's state convictions were used to determine Defendant's criminal history category. Defendant, however, asserted that his state court conviction for theft of property was conduct relevant to his conviction for distribution of crack cocaine and, therefore, should have been used to compute his base offense level and not his criminal history. Section 4A1.1 provides instructions for determining a defendant's criminal history.

> §4A1.1.   <u>Criminal History Category</u>
>
> The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
> (a) Add **3** points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add **1** point for each prior sentence not counted in (a) or (b), up to a total of **4** points for this item.
>
> (d) Add **2** points if the defendant committed the instant offense

>     while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
>
> (e) Add **2** points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If **2** points are added for item (d), add only **1** point for this item.
>
> (f) Add **1** point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was considered related to another sentence resulting from a conviction of a crime of violence, up to a total of **3** points for this item. *Provided*, that this item does not apply where the sentences are considered related because the offenses occurred on the same occasion.

USSG §4A1.1 (emphasis in original). Application Note 1 in the commentary to USSG §4A1.2 defines a prior sentence as "a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense." The court must consider conduct that is a part of the current offense as relevant conduct for determining a defendant's base offense level instead of a past sentence for calculating a defendant's criminal history. *United States v. Blumberg*, 961 F.2d 787, 791 (8th Cir. 1992) (citing *United States v. Query*, 928 F.2d 383, 386 (11th Cir. 1991)). However, "conduct is not part of the offense of conviction when the conduct is a severable, distinct offense." *Blumberg*, 961 F.2d at 791 (citing *United States v. Beddow*, 957 F.2d 1330, 1338 (6th Cir. 1992) and *United States v. Banashefski*, 928 F.2d 349, 353 (10th Cir. 1991)).

During trial, Defendant testified that, after the offense of conviction, Special Agent

Simmons contacted him and asked to purchase crack cocaine for $2,400. Although he did not have crack cocaine and did not intend to sell Special Agent Simmons crack cocaine, Defendant arranged to meet Special Agent Simmons for the purpose of "get[ting] the $2,400 from him." Special Agent Simmons testified that he fronted Defendant $2,400 for the crack cocaine, Defendant left, but Defendant did not return with either the crack cocaine or the $2,400.

The Complaint and Trial Information filed in state court charged that, on or about October 10, 2003, Defendant was found in possession of $2,400, the property of another, with the intent to deprive the other of such property. (PSIR ¶ 63) The theft of $2,400 from Special Agent Simmons was the basis for Defendant's theft conviction in state court. This offense was separate and distinct from the current offense and, therefore, was not "relevant conduct" for purposes of evaluating Defendant's base offense level. *See* USSG §1B1.3.

There was no indication that Defendant's conduct that resulted in his state court convictions for operating a vehicle while intoxicated and possessing marijuana are related to his distribution of crack cocaine. Accordingly, these convictions were not "relevant conduct" for purposes of evaluating Defendant's base offense level. *See* USSG §1B1.3.

The underlying facts of Defendant's three state convictions were separate and distinct from Defendant's distribution of crack cocaine and, therefore, were not "relevant conduct" for purposes of establishing his base offense level and were properly used for calculating Defendant's criminal history. Because none of the offenses for which Defendant was sentenced in state court were considered "relevant conduct" when the court determined Defendant's base offense level for his current sentence, a concurrent federal sentence was not *mandatory*. USSG §5G1.3(a).

Under USSG §5G1.3(c), the court had the *discretion* to run Defendant's federal sentence concurrently, partially concurrently or consecutively to his state court terms of imprisonment. To determine whether a sentence should run concurrently or consecutively to an undischarged sentence, Application Note 3 of USSG §5G1.3(c) provides the following factors for the court to consider:

> (i) the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
>
> (ii) the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>
> (iii) the time served on the undischarged sentence and the time likely to be served before release;
>
> (iv) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>
> (v) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

USSG §5G1.3, cmt. (n.3) (emphasis in original). The court evaluated the 18 U.S.C. § 3553(a) factors and the factors provided in Application Note 3 of USSG §5G1.3 to determine whether a consecutive or concurrent sentence was proper. As previously noted, Defendant's conduct for which he was sentenced in state court was separate and distinct from his distribution of crack cocaine. To ensure that there was some incremental sanction for Defendant's unrelated criminal conduct, the court ordered his sentence to run consecutively to his state court sentences.

## IV. CONCLUSION

The court found that **Defendant's base offense level under the advisory Sentencing Guidelines was 28**. USSG §§2D1.1(c)(7), 2D1.2(a)(1). Defendant was subject to a **two**-level upward adjustment pursuant to USSG §3C1.1. Accordingly, the court found Defendant's **adjusted offense level was 30**. Because Defendant was **Criminal History Category VI**, the court found that **Defendant's advisory Sentencing Guidelines range was 168 to 210 months' imprisonment.** *See* USSG Sentencing Table. The court found a downward variance was not warranted and ordered Defendant's sentence to run consecutive to his state sentences. The court sentenced Defendant within the advisory sentencing guideline range and to a term of imprisonment of 168 months' imprisonment.

**IT IS SO ORDERED.**

**DATED** this 19th day of September, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA